**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE**

**CIVIL ACTION NO. 05-192-DLB**

**JEFFREY SEXTON**                                                                                                 **PLAINTIFF**

**vs.**                                **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                             **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Judy Sexton filed an application for Supplemental Security Income (SSI) payments on behalf of her son, Plaintiff Jeffrey Sexton, on April 1, 1991; and Jeffrey was found disabled as a child. In 1996, the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105 ("Welfare Act"), amended the definitions in 42 U.S.C. § 1382c and changed the criteria for determining SSI benefits. In addition to affecting the award of benefits to future recipients, the Welfare Act required the Commissioner to redetermine benefits for all children who were receiving SSI benefits at the time of enactment (August 22, 1996). *See* Pub L. No. 104-193, § 211(d)(2)(A), 110 Stat. 2105, 2190. Pursuant to this change, the Commissioner re-evaluated Plaintiff's claim

in 1997, and found that he was no longer eligible for SSI benefits. After Plaintiff's claim was denied upon reconsideration, he requested a hearing before an Administrative Law Judge (ALJ). Approximately one month later, Plaintiff turned eighteen, thereby converting his claim to an adult SSI claim. See 20 C.F.R. §§ 416.905, 416.906, 416.987 (2005). In the interim (and prior to the administrative hearing on his SSI claim), Plaintiff filed a separate application for Childhood Disability Insurance Benefits (DIB), on January 4, 1999. This was a "childhood" claim because it was based upon the wage record of a parent, see 20 C.F.R. § 404.350 (2005), not because it involved child standards for determining disability.

ALJ James D. Kemper, Jr., consolidated Plaintiff's adult SSI and childhood DIB claims (Tr. 228). Following a hearing on February 16, 1999, he issued a denial decision on June 25, 1999, finding Plaintiff not disabled (Tr. 238). On October 11, 2002, the Appeals Council remanded the case for vocational expert testimony, and because the hearing tape was lost (Tr. 250-51). After a second hearing was held on January 21, 2003 in Prestonsburg, Kentucky, ALJ Kemper issued a denial decision on January 28, 2004, again finding Plaintiff not disabled (Tr. 22). The Appeals Council denied Plaintiff's request for further review by letter dated April 16, 2005, rendering ALJ Kemper's decision the final decision of the Commissioner on Plaintiff's claims.

Plaintiff, who was 23 years old at the time of the hearing, has a seventh grade education and no vocationally relevant past work experience. He claims continued disability based upon: his education, mental illness, a nervous condition, asthma, and allergies. At the hearing, Plaintiff also testified that he injured his right knee in an automobile accident; and he has pain in his back and his hands.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on June

17, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

Because Plaintiff also filed an application for Childhood Disability Benefits, he must also meet certain non-disability requirements, including: 1) that he filed an application for benefits, 2) at a time when he was unmarried and either was not yet 18 or enrolled full-time in school and not yet 19, or was under a disability that began before he was 22, and 3) he was dependent upon the insured individual.  See 42 U.S.C. § 402(d)(1).[1]

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 16).  At Steps 2 and 3, the ALJ found that Plaintiff's allergies, dysthymia, anxiety disorder (not otherwise specified), avoidant personality disorder, and borderline intellectual functioning (BIF) constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16-18).  At Step 4, the ALJ found that Plaintiff possessed the following residual functional capacity (RFC):

> The claimant has poor (seriously limited, but not precluded) ability to use judgment, deal with work stress, function independently, and understand, remember, and carry out complex and detailed job instructions.  He has fair (limited but satisfactory) ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, maintain attention and concentration, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  He has a good ability to understand, remember, and carry out simple job instructions.

(Tr. 19).

---

[1] The ALJ found that Plaintiff satisfied these requirements.  (Tr. 15).

4

Because Plaintiff has no past relevant work, the ALJ proceeded to Step 5, where he concluded that there are a significant number of jobs Plaintiff can perform, including material handler (heavy); assembler and food preparation worker (medium); stock clerk and machine tender (light); and bench worker and machine tender (sedentary). (Tr. 20). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

Plaintiff does not raise any specific errors on appeal; rather he argues generally that the "Commissioner's denial ... is not based upon the substantial and uncontradicted medical and testimonial evidence documenting [his] severe physical and mental conditions ...." (Doc. #6, p.10). He also contends that "[w]hen [his] subjective complaints and treating physicians' opinions were incorporated in the hypothetical, the vocational expert conceded that [he] would be unable to perform work on a regular and sustained basis." (*Id*. at p.11). In response, the Commissioner alleges that "[t]he record solidly supports the proposition that [Plaintiff's] impairments are not so severe as to prevent [him] from engaging in any substantial gainful activity for a period of 12 months or more, which is the adult standard for disability." (Doc. #7, p.4). As evidence, the Commissioner points to the opinion of consultative examiner Dr. Dennis Sprague, who completed a mental RFC assessment that was ultimately adopted by the ALJ and supported his finding of non-disability. The Commissioner acknowledges, however, the ALJ mistakenly believed that Dr. Sprague's report was "more restrictive" than an assessment completed by another consultative

5

examiner, psychologist Barry Adkins.  According to the Commissioner, this error is harmless.  For the following reasons, the Court disagrees.

The record in this case reveals that Plaintiff underwent two consultative psychological evaluations.  The first was performed on January 11, 2003 by Barry Adkins, a certified clinical psychologist.  (Tr. 257-61).  Mr. Adkins administered a battery of tests, including the WAIS-III, Bender Visual Motor Gestalt test, "draw-a-person" test, and WRAT-III.  (Tr. 257).  Based upon his findings and clinical interview, Mr. Adkins concluded that Plaintiff has "fair basic cognitive skills."  (Tr. 260).  He also completed a mental RFC form, in which he indicated that Plaintiff has good ability to use judgment, maintain attention/concentration, and understand, remember, and carry out simple job instructions; and fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, understand, remember, and carry out complex and detailed job instructions, maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (Tr. 262-63).  The form used by Adkins defined "good" as "limited but satisfactory," "fair" as "seriously limited, but not precluded," and "poor or none" as "no useful ability."  (Tr. 262).

Plaintiff underwent a second consultative psychological evaluation two months later, on March 6, 2003, by Dr. Dennis Sprague.  (Tr. 267-72).  Dr. Sprague administered many of the same tests as Mr. Adkins, and completed a mental RFC form as well.  The form used by Dr. Sprague, however, defined Plaintiff's abilities in different terms.  Specifically, it defined "good" as "more than satisfactory," "fair" as "limited but satisfactory," "poor" as "seriously limited, but not precluded," and "none" as "no useful ability."  (Tr. 273).  Using

6

that terminology, Dr. Sprague opined that Plaintiff has good ability to understand, remember, and carry out simple job instructions; fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, maintain attention/concentration, understand, remember, and carry out complex and detailed job instructions, maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability; and poor ability to use judgment, deal with work stresses, and function independently. (Tr. 273-75).

The ALJ found that both of these evaluations were consistent with the overall medical record. (Tr. 19). Ultimately, he elected to give greater weight to Dr. Sprague's opinion, believing that it was "more restrictive," and that by doing so, he was giving Plaintiff the "maximum benefit of the doubt." (Tr. 19). A closer examination, however, reveals that due to the difference in terminology described above, Mr. Adkins' assessment was, in fact, more restrictive. The Court also notes that, although the ALJ expressly stated that he was giving greater weight to Dr. Sprague's opinion, his RFC assessment was a "mixed bag," incorporating certain findings of both examiners. Although this is not atypical, the Court concludes that it warrants remand because: 1) the ALJ expressly stated that he deferred to Dr. Sprague's opinion, solely because he believed it was more restrictive than Mr. Adkins', and 2) the vocational expert conceded that a person with the limitations imposed by Mr. Adkins would be precluded from performing the "other work" cited as being available. (Tr. 312). Under these circumstances, the Court would be constrained to conclude that the ALJ's RFC assessment is supported by substantial evidence, and that the testimony of the vocational expert is sufficient to sustain the Commissioner's burden at Step 5. Instead, the Court concludes that remand is necessary to resolve the differences

in the medical evidence, as well as the inconsistencies in the ALJ's analysis at Steps 4 and 5.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #7) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #6) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 21st day of June, 2006.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-192-SextonMOO.wpd